IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN KUTRUBIS and BETTY STOKES,<br><br>    Cross-Claimants,<br><br>v.<br><br>EUGENIA KAMBEROS, individually and as Trustee for Lambros J. Kutrubis Trust Dated 5/31/2022,<br><br>    Cross-Respondent.<br><br>EUGENIA KAMBEROS, individually and as Trustee for Lambros J. Kutrubis Trust Dated 5/31/2022,<br><br>    Cross-Petitioner,<br><br>v.<br><br>JOHN KUTRUBIS and BETTY STOKES,<br><br>    Cross-Respondents. | Case No. 21 C 3134<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Banner Life Insurance Company ("Banner")[1] initiated this action by filing a complaint-in-interpleader after receiving competing claims for life insurance proceeds. Following the death of Lambros Kutrubis ("Lambros")[2], Cross-Claimants John Kutrubis ("Kutrubis") and Betty Stokes ("Stokes") and Cross-Petitioner Eugenia Kamberos ("Kamberos") seek a declaratory judgment establishing their entitlement to the proceeds. (*See* Dkt. 14, Dkt. 19). Cross-Claimants moved for

---

[1] Banner is no longer a party to this case pursuant to the joint stipulation entered into on December 16, 2021. (Dkt. 30).

[2] To avoid confusion, the Court refers to the decedent, Lambros Kutrubis, by his first name.

1

summary judgment on their claims (Dkt. 48); Kamberos contends that triable fact issues exist. For the reasons discussed below, Cross-Claimants' motion for summary judgment is granted.[3]

## BACKGROUND

The facts are taken from the parties' Local Rule 56.1 Statements.[4] Lambros, the decedent, was insured under Banner Life Insurance Policy No. 17B568764 with a face amount of $650,000 (the "Policy"). (Cross-Cl.'s SOF ¶ 6, Dkt. 50; Cross-Pet.'s SOF ¶ 1, Dkt. 51). Kutrubis is the lawfully adopted son of Lambros. (Cross-Cl.'s SOF ¶ 1). Stokes is Lambros' ex-wife and Kutrubis' mother. (*Id.* ¶ 2). In May 2019, Lambros executed a durable power of attorney appointing Stokes as his attorney-in-fact and revoking all previously granted powers of attorney. (*Id.* ¶ 10). Kamberos is Lambros' sister, the executor of Lambros' probate estate, and the successor trustee of the Lambros J. Kutrubis Trust dated May 31, 2002 (the "Trust"). (Cross-Cl.'s SOF ¶ 3; Cross-Pet.'s SOF ¶ 10). Lambros passed away from cancer on September 11, 2020, and now the parties dispute who is entitled to the life insurance proceeds under the Policy. (Cross-Cl.'s SOF ¶ 21; Cross-Pet.'s SOF ¶ 2, 3).

Banner's records reflect that the "then acting trustee under the" Trust is the named primary beneficiary of the policy. (Cross-Cl.'s SOF ¶ 6). However, on or about June 1, 2020, Lambros contacted James Wedel ("Wedel") and asked him to type a letter that was to be sent to Banner to change the beneficiary of the Policy. (*Id.* ¶ 15). Lambros dictated the letter, provided the name and

---

[3] While the motion indicates that Cross-Claimants seek summary judgment on their cross claim, their memorandum in support does not address tortious interference (Count II) or undue influence (Count III). Thus, the Court does not expressly consider whether they are entitled to summary judgment on those claims.

[4] Cross-Petitioner did not file a response to Cross-Claimants' statement of facts as required under Local Rule 56.1(b). Instead, Cross-Petitioner filed her own statement of facts, to which Cross-Claimants did not respond as required under Local Rule 56.1(c). That said, the basic facts here are essentially undisputed and neither party asserts anything contradictory. Thus, all facts from each statement are deemed admitted. *See Kainrath v. S. Stickney Sanitary Dist.*, No. 11 C 878, 2012 WL 4361570, at *1 (N.D. Ill. Sept. 19, 2012) ("A failure to respond to an opponent's statement of facts will result in those facts being deemed admitted for purposes of summary judgment.").

address for Banner and his social security number, and instructed Wedel to include signature and address blocks for two witnesses. (*Id*.) A few days later, Lambros contacted Wedel and told him to date the letter for June 6, 2020, and bring the letter to Mart Anthony's Italian Restaurant to be signed. (*Id*. ¶ 16). On June 6, 2020, Lambros signed the letter before two witnesses, Wedel and John Campo ("Campo"), and a notary public, Michael Tovella ("Tovella"), all of whom also signed the letter. (*Id*. ¶ 17). Copies of the letter were made and Wedel put the original letter with proper prepaid postage in a United States Post Office drop box. (*Id*. ¶ 18).

Months passed, and then on or about November 2, 2020, after Lambros' death, counsel for Cross-Claimants sent a letter, attaching the change of beneficiary letter, to Banner requesting that it issue the proceeds due under the Policy. (*Id*. ¶ 22). On December 6, 2020, Banner responded, indicating that the change of beneficiary letter was not received prior to Lambros' death. (Cross-Cl.'s SOF ¶ 23; Cross-Pet.'s SOF ¶ 5). Banner's letter referenced the terms of the Policy, which provided: "During the insured's lifetime, the owner may change the beneficiary designation unless he or she has waived the right to do so. No beneficiary change will take effect until written notice is received in our administrative office." (*Id.*) Nevertheless, Banner's letter instructed Cross-Claimants to complete a claimant statement form if they wished to make a claim for proceeds under the Policy. (*Id*.) Between January 18 and January 22, 2021, Banner received claim forms from Cross-Claimants. (Cross-Cl.'s SOF ¶ 24). On or about February 9, 2021, counsel for Kamberos sent a letter to Banner stating that she had been named as the executor of the probate estate and successor trustee of the Trust. (Cross-Pet.'s SOF ¶ 7).

Thereafter, Banner notified both sides of the competing claims and instructed them that if they were unable to reach an agreement within 30 days, Banner would deposit the proceeds with the court and file an interpleader action. (*Id*. ¶ 8). As indicated, on June 10, 2021, Banner filed an

interpleader complaint (Dkt. 1), and by agreement of the parties, deposited the proceeds with the court. (Cross-Cl. SOF ¶ 27).

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's function is to "determine whether there is a genuine issue for trial," not to make determinations of truth or weigh evidence. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). All facts and inferences are construed in the light most favorable to the nonmoving party. *Nischen v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017).

## DISCUSSION

Cross-Claimants contend that summary judgment should be granted in their favor because the facts in this case are incontrovertible and the steps taken by Lambros to change the beneficiary of the Policy were sufficient under Illinois law. On the other hand, Kamberos contends summary judgment must be denied as there are several issues of fact related to the affidavits submitted by Cross-Claimants, Stokes breached her fiduciary duty and unduly influenced Lambros, and the purported change of beneficiary form is void because it was prepared by a non-attorney. Having reviewed the record and considered the parties' arguments, the Court finds that Cross-Claimants are entitled to summary judgment.

To resolve the parties' declaratory judgment claims, the Court must determine the rightful beneficiary of the Policy. "In cases such as the one at bar where an interpleader action is filed[,] the insurance company waives strict compliance with the terms of the policy dictating the

procedure for changing a beneficiary." *Rendleman v. Metro. Life Ins. Co.*, 937 F.2d 1292, 1296 (7th Cir. 1991) (citing *Travelers Ins. Co. v. Smith*, 106 Ill. App. 3d 318, 320 (1st Dist. 1982)). Thus, "[u]nder Illinois law, substantial compliance is the norm when the insurer has interpled because interpleader insulates the insurance company from the risk of double liability." *Hartmann v. Prudential Ins. Co. of Am.*, No. 90 C 1921, 1992 WL 159308, at *3 (N.D. Ill. July 1, 1992), *aff'd*, 9 F.3d 1207 (7th Cir. 1993). "[P]roving substantial compliance in Illinois is not easy; it requires showing (1) a clear expression of the insured's intention to change beneficiaries, and (2) a concrete attempt [by the insured] to carry out his intention as far as was reasonably in his power." *Allen v. Jackson Nat'l Life Distributors, LLC*, No. 12 C 9391, 2014 WL 13114118, at *4 (N.D. Ill. Apr. 28, 2014). If the insured has substantially complied with the terms of the policy, the change of beneficiary will be upheld. *Connecticut Gen. Life Ins. Co. v. Gulley*, 668 F.2d 325, 327 (7th Cir. 1982). Here, Cross-Claimants argue that Lambros substantially complied with the requirements to change the beneficiaries of the Policy.

In support of their position, Cross-Claimants rely on *Gulley*. There, the Seventh Circuit explained that cases dealing with change of beneficiaries fall into two categories: (1) cases where "the insured took a number of positive steps to change the beneficiary, but unusual circumstances prevented strict compliance with the terms of the policy" or (2) cases where "the insured took virtually no steps to abide by the terms of the policy regarding a change of beneficiaries" and "the only evidence of an attempted change was an oral statement by the insured that he intended to change the beneficiary of his insurance policy." *Id.* at 327. The court found there that the decedent had taken a number of positive steps to change his beneficiary before his death, including obtaining the correct form, executing the form properly and in the presence of a witness, explaining to his daughter why the change was being made, and expressing his intent to deliver the form. *Id*. The

5

court concluded that "[a]lthough the final step of delivering the Change of Beneficiary form to the employer or directing that it be delivered did not occur," there was substantial compliance with the terms of the policy and upheld the change. *Id*. at 327-28.

Similar to *Gulley*, the unrebutted facts in this case show that Lambros took a number of positive steps to change his beneficiary, including asking Wedel to type the change of beneficiary letter, dictating the letter, gathering people at a restaurant to witness the execution of the letter, executing the letter before two witnesses and a notary, and directing Wedel to place the letter in the mail. (Cross-Cl.'s SOF ¶ 15-18). While Kamberos did not object to these facts, she argues that there are several critical issues which preclude summary judgment.

First, she contends that the affidavits create an issue of fact because there is no way that execution of the letter took place as attested to by the affiants (in the back corner of a restaurant) as there was a global pandemic and the City of Chicago had imposed stay-at-home orders and social distancing ordinances. Critically, Kamberos does not provide any contradictory affidavits or other testimony is support of her position. Instead, she asks the Court to take judicial notice of the fact that there was a pandemic, Illinois and the City of Chicago had stay-at-place orders from March 20 through June 3, 2020, and the City of Chicago permitted outdoor dining only from June 3 through June 6, 2020. While the Court may take judicial notice of such facts, *see Beaumont Med. Ctr. Hotel, LLC v. Mt. Hawley Ins. Co.*, No. 22 C 2585, 2024 WL 1116093, at *2 (N.D. Ill. Mar. 13, 2024), doing so does not create a genuine issue of material fact.

To survive a motion for summary judgment, Kamberos must counter Cross-Claimants' affidavits with materials of evidentiary quality, such as affidavits or depositions that demonstrate a triable factual dispute. *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995). "Speculation cannot create a genuine issue of fact that defeats summary judgment." *Flowers v. Kia Motors Fin.*,

105 F.4th 939, 946 (7th Cir. 2024). Yet, speculation is all that Kamberos offers here. As she concedes, the restaurant very well could have violated the pandemic orders; however, that is irrelevant. The salient issue before the Court is whether the affiants and Lambros met in a restaurant and executed the change of beneficiary letter. The affidavits offered by Cross-Claimants establish that they did, and Kamberos presents no meaningful evidence to suggest otherwise.

Second, Kamberos contends the affidavits are inadmissible under the Illinois Dead Man's Act and the corresponding Federal Rule of Evidence pertaining to witness competency. The Act provides in relevant part,

> In the trial of any action in which any party sues or defends as the representative of a deceased person . . . , no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased . . . or to any event which took place in the presence of the deceased . . . .

735 ILCS 5/8-201. The purposes of the Act are to protect decedents' estates from fraudulent claims and to equalize the position of the parties in regard to the giving of testimony. *Gunn v. Sobucki*, 216 Ill. 2d 602, 609 (2005).

Cross-Claimants contend that the Dead Man's Act does not apply to Wedel, Campo, Tovella, or Jared Kelner's affidavits because they are not adverse parties or interested parties. The Court agrees. Wedel, Campo, Tovella, or Kelner do not have any pending claims against Lambros' estate; thus, they are not adverse parties. *See Yasante Foy v. City of Chi.*, No. 15 C 3720, 2017 WL 11886346, at *8 (N.D. Ill. Mar. 2, 2017). To be an interested party, "the witness's interest in the judgment must be such that a pecuniary gain or loss will come to the witness directly as the immediate result of the judgment." *Id*. Kamberos has not offered any facts to suggest that Wedel, Campo, Tovella, or Kelner either seek to gain or lose anything from the results of this case; consequently, they are not interested parties. And because they are not adverse or interested, their affidavits are not barred by the Dead Man's Act. *See In re Neiderer*, 196 B.R. 417, 419 (Bankr.

C.D. Ill. 1996) (Because neither witness had "any interest in the outcome of these proceedings, the [c]ourt can and will consider the testimony of [the witnesses] regarding matters which were allegedly said or done in the presence of the decedent before his death.").

As to the fifth affiant, Stokes, Cross-Claimants concede that she is an interested party in this case. However, Cross-Claimants argue that her affidavit is not barred by the Dead Man's Act because no party in this case is suing or defending as a representative of a deceased person. Cross-Claimants are correct. "A policy of life insurance is not deemed an asset of the estate of the insured unless it i[s] made payable to him, his executors or administrators." *Gurnett v. Mut. Life Ins. Co. of New York*, 356 Ill. 612, 619 (1934). As such, the proceeds at issue in this case are not part of Lambros' estate. And while Kamberos may also be executor of Lambros' estate, in this case, she is suing and defending in her individual capacity and as trustee of the Trust only. Therefore, Kamberos is not entitled to invoke the Dead-Man's Act. *See Leoris v. Chi. Title Land Tr. Co.*, No. 18 C 2575, 2021 WL 5505540, at *8 (N.D. Ill. Nov. 24, 2021) (finding that wife who was suing in her capacity as an assignee of deceased husband's trust was not suing or defending in a representational capacity).

Third, Kamberos maintains that there is an issue of fact because she engaged a handwriting expert, who concluded that it was unlikely that the signature on the change of beneficiary letter was Lambros'. But "[a] party who wants to rely on an expert report at the summary judgment stage must come forward with an affidavit or declaration from the expert. In the affidavit or declaration, the expert must confirm that he or she would testify consistent with the expert report at trial." *Allen v. Benton*, No. 18 CV 4047, 2022 WL 18147674, at *4 (N.D. Ill. Feb. 25, 2022). Unsworn expert reports are inadmissible under Federal Rule of Civil Procedure 56(e). *Geraci v. Macey*, No. 14 CV 06876, 2016 WL 3671400, at *3 (N.D. Ill. July 11, 2016) (citing *Estate of Brown v. Thomas*, 771

F.3d 1001, 1005-06 (7th Cir. 2014)). Because the handwriting expert's report here is unsworn, the Court will not consider it.

Next, Kamberos argues that there is an issue of fact regarding whether Stokes unduly influenced Lambros to change the beneficiary of the Policy. Under Illinois law, a rebuttable presumption that a change of beneficiary of proceeds was executed because of undue influence is raised where: "(1) a fiduciary relationship exists between the testator and a substantial and comparatively disproportionate beneficiary under the will, (2) the testator is in a dependent situation in which the substantial and disproportionate beneficiary is in a dominant role, (3) the testator reposes trust and confidence in such beneficiary, and (4) the will is prepared or procured and executed in circumstances wherein such beneficiary is instrumental or participated. *In re Est. of Coffman*, 2022 IL App (2d) 210053, ¶ 86. "To establish a *prima facie* case of the elements necessary to raise a presumption of undue influence, a plaintiff must proffer at least some evidence on every essential element of the cause of action." *Id*. Once a *prima facie* case has been established, the burden is on the proponent of the will to present evidence tending to rebut the presumption. *Id*. at ¶ 88. As an initial matter, Cross-Claimants contend that the undue influence principle does not apply outside of the context of making a will. The Court need not consider this argument because, even if the principle does apply, Kamberos has failed to meet her burden.

While the parties agree that Stokes was a fiduciary for Lambros since she was his power of attorney, they disagree about whether the other elements required to establish undue influence are met. Kamberos argues they are satisfied by medical records and testimony indicating that Lambros was suffering from cancer, taking morphine, and very sick and weak. Additionally, Kamberos points to the affidavits, which state that Lambros looked pale and unenergetic. However, those facts do not establish undue influence for several reasons. First, Kamberos has not

provided the Court with the medical records or testimony that she references. At the summary judgment stage, litigants must do more than point to evidence that is not a part of the record. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."); *Cas. Indem. Exch. v. City of Chi.*, No. 84 C 9369, 1985 WL 5094, at *1 (N.D. Ill. Dec. 23, 1985) ("It is not sufficient merely to rely upon the allegations of one's pleadings or memoranda or to summarize the contents of documents that are not in the record."). Additionally, Kelner averred both that Lambros looked pale and unenergetic and was cheerful and generally upbeat. In other words, these statements are not necessarily inconsistent.

In similar cases, courts have found that the mere fact that the testator was in poor health does not give rise to an automatic inference of undue influence. *See In re Est. of Glogovsek*, 248 Ill. App. 3d 784, 796 (1993) ("The mere facts that the testator's health was deteriorating, that he was characterized as withdrawn and disinterested, and that [the fiduciary] was talkative and outgoing, while being relevant, do not give rise to an automatic inference that she dominated the testator."); *In re Est. of Lemke*, 203 Ill. App. 3d 999, 1005-06 (1990) ("We find it significant that although the evidence shows that [the testator] was in poor health and required some assistance in her everyday needs, there is no evidence attacking her testamentary capacity."). The Court reaches the same conclusion here.

Additionally, Kamberos asserts that undue influence is established because all the witnesses and the notary were friends of Stokes. The Court is not convinced, especially given that the affiants also provided statements regarding their relationships with Lambros. Specifically, Wedel stated that he has known Lambros *and* Stokes for more than thirty years and performed

10

worked on behalf of them both. The notary, Tovella, stated that he knew Lambros for about seven years and had many social interactions with him and Stokes.

Finally, Kamberos contends that undue influence is established because the change of beneficiary letter was not written by Lambros himself. The Court disagrees. Her contention might be stronger if Stokes had drafted the letter, but the unrebutted evidence shows that Lambros contacted Wedel and dictated the letter to him. Nothing in the record reflects that Stokes was involved in the drafting of the letter. In sum, based on the facts present in this case, Kamberos has not established a *prima facie* case of undue influence.

Relatedly, Kamberos maintains that Stokes breached her fiduciary duty to Lambros. To succeed in a claim for breach of fiduciary duty, a plaintiff must prove the following elements: (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains. *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013). Stokes could only breach a fiduciary duty owed if she did not treat Lambros with "the utmost candor, rectitude, care, loyalty, and good faith." *Id.* at 832. In other words, if Stokes helped procure the outcome that Lambros wanted, then there was no breach. *Id.* Kamberos has not presented any evidence that Stokes did not treat Lambros with candor, rectitude, care, loyalty, or good faith. Nor has she presented any evidence that Stokes helped procure an outcome that was contrary to Lambros' desires. Accordingly, Kamberos has failed to point to evidence showing that Stokes breached her fiduciary duty to Lambros.

Finally, Kamberos argues that the change of beneficiary letter is void because it was drafted by a non-attorney. "[I]t is well settled that the effect of a person's unauthorized practice on behalf of a party is to require dismissal of the cause or to treat the particular actions taken by the representative as a nullity." *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 390 (2005). The

practice of law "includes the giving of advice or the rendering of any services requiring the use of legal skill or knowledge, such as preparing a will, contract or other instrument, the legal effect of which, under the facts and conditions involved, must be carefully determined." *People ex rel. Ill. State Bar Ass'n v. Schafer*, 404 Ill. 45, 50 (1949). Wedel's unrebutted affidavit states that Lambros dictated a letter and Wedel typed it. Typing a letter does not constitute the unauthorized practice of law. Moreover, Kamberos offers no evidence that Wedel provided legal advice or any other service which required the use of legal skill or knowledge. Thus, she has failed to show that Wedel was engaged in the unauthorized practice of law.

Because each of Cross Petitioner Kamberos' arguments fail to show the existence of a material fact dispute and Cross-Claimants have demonstrated that Lambros' substantially complied with the terms of the Policy in changing his beneficiary as a matter of law, the Court enters summary judgment in favor of Kutrubis and Stokes.

## CONCLUSION

For the reasons stated above, Cross-Claimants' Motion for Summary Judgment [48] is granted.

**DATED**: November 18, 2024           **ENTERED**:

_LaShonda A. Hunt_
LASHONDA A. HUNT
United States District Judge